1

2

3

4

5

6

7

8             IN THE UNITED STATES DISTRICT COURT

9           FOR THE EASTERN DISTRICT OF CALIFORNIA

10   TIMMY O'NEIL CHARITY,

11            Plaintiff,              No. CIV S-04-0444 GEB GGH P

12        vs.

13   THOMAS CARROLL, Warden, et al.,   <u>ORDER</u> &

14            Defendant.              <u>FINDINGS AND RECOMMENDATIONS</u>

15   _____/

16   <u>Introduction</u>

17            Plaintiff, a prisoner incarcerated in the State of Delaware, seeks relief pursuant to

18   42 U.S.C. § 1983.  Pending before the court is defendant Warden of Delaware Correctional

19   Center, Thomas Carroll's,[1] motion to dismiss, pursuant to Fed. R. Civ. P. 12(b), filed on October

20   4, 2006, to which plaintiff filed his opposition, on October 30, 2006; defendant's reply was filed

21   on October 31, 2006.

22   \\\\\

23   \\\\\

24   \\\\\

25   _____

26       [1] Defendant Carroll's motion to set aside entry of default was granted by <u>Order</u>, filed on
     September 8, 2006.

1

1 <u>Plaintiff's Allegations</u>

2         The court borrows from its prior recitation of plaintiff's claims with appropriate

3 modification.  This action proceeds upon the amended complaint, filed on May 7, 2004,[2] against

4 three defendants: Thomas Carroll, Warden, Delaware Correctional Center; J.S. Woodford,

5 Director of the California Department of Corrections (CDC); Bill Lockyer, Attorney General of

6 California.  On October 21, 2002, the California Department of Justice (DOJ) requested and

7 received plaintiff's saliva and blood DNA[3] samples, as well as finger and palm prints and photos.

8 Amended Complaint (AC), p. 3A.  Plaintiff's exhibit C makes clear that he is challenging a

9 second taking of his DNA blood and saliva samples and finger and palm prints, pursuant to an

10 order or request of the (then) California Department of Corrections (now California Department

11 of Corrections and Rehabilitation - CDCR), which was apparently issued pursuant to Cal. Penal

12 Code § 296,[4] et seq.  The DNA samples were obtained without due process afforded plaintiff,

13 which due process violation also occurred on December 9, 1998, upon an earlier request by the

14 California DOJ, headed by defendant Lockyer, for the plaintiff's DNA samples.  AC, p. 3A.

15 Defendants Carroll and Woodford have custody of plaintiff.  <u>Id</u>.

16         Plaintiff was never notified either in 1998 or 2002 of the required DNA sample

17 testing; had plaintiff refused to comply with the 2002 order, a prison disciplinary report would

18 have been issued against plaintiff, which report would have served as a basis for the parole board

19 to deny plaintiff parole.  <u>Id.</u>  The 2002 DNA testing was exactly the same testing performed in

20

21         [2] Plaintiff's original filing, on March 4, 2004, inappropriately in the form of a habeas

22 application, was dismissed with leave granted for plaintiff to file a civil rights action under 42
U.S.C. § 1983.  <u>See</u> <u>Order</u>, filed on April 15, 2004.

23         [3] Deoxyribonucleic Acid (DNA).

24         [4] Cal. Penal Code § 296 specifies that individuals who have been convicted of the felony
offenses therein identified  "shall provide buccal swab samples, right thumbprints, and a full

25 palm print impression of each hand, and any blood specimens or other biological samples
required...for law enforcement identification analysis...."  Such individuals are to be "included

26 within the state's DNA and Forensic Identification Data Base and Data Bank program...."

1998. Id.  DNA testing in plaintiff's case is a registration requirement as a condition of release.

Id.  Plaintiff's California state court habeas petitions with respect to the second DNA test were

denied. AC, pp. 3A-3B & Exhibits C, D, E.  Plaintiff alleges that the denial of his petition(s)

constituted a denial of due process in the search and seizure of DNA samples from him; plaintiff

is concerned that his DNA samples will not be properly safeguarded and that the DOJ could

require additional DNA samples in the future.  AC, p. 3B.  Plaintiff seeks a declaratory judgment

only.[5]  See Order & Findings and Recommendations, filed on August 10, 2005, adopted by

Order, filed on September 28, 2005.[6]

Plaintiff has subsequently clarified, in light of a prior motion to dismiss brought

by defendants Woodford and Lockyer, on, inter alia, the ground that the action as to the taking of

the 1998 DNA samples is barred by the statute of limitations, that what is at issue is the

constitutionality of the taking of the October, 2002 DNA samples.  The court has found that the

taking of the 1998 sample is provided as a "background or historical fact essential to his claim

arising from the taking of a second DNA sample in 2002....[w]ithout this background fact,

plaintiff could not challenge the constitutionality of the taking of the 2002 DNA sample...because

his claim is premised on the allegation that to repeat the sample taking and testing subjected him

to a constitutional deprivation."  Id., at 8-9.

\\\\\

\\\\\

\\\\\

---

[5] The court has previously found that plaintiff, in addition to seeking declaratory relief, also asks for "prospective injunctive relief, seeking not to be subjected again by defendants, in their official capacities, to any future taking of DNA samples in violation of his federal constitutional rights."  Order & Findings and Recommendations, filed on 8/10/05, pp. 6-7, adopted by Order, filed on 9/28/05.  As both defendants Woodford and Lockyer have been sued in their official capacities and no longer hold their respective positions, pursuant to Fed. R. Civ. P. 25(d), California Department of Corrections and Rehabilitation (CDCR) Secretary James Tilton and Attorney General Edmund Brown are substituted in as official capacity defendants.

[6] Denying the motion to dismiss brought by defendants Woodford and Lockyer.

1   Motion to Dismiss[7]

2         Defendant Carroll moves for dismissal (under Fed. R. Civ. P. 12(b)(3)) in the

3 interests of justice, pursuant to 28 U.S.C. § 1404(a), or alternatively, for the case to be

4 transferred, on the ground that venue is improper in this U.S. District Court; in the alternative,

5 defendant moves to dismiss on the ground, under nonenumerated Fed. R. Civ. P. 12(b), that

6 plaintiff did not exhaust administrative remedies; defendant also avers that plaintiff fails to state

7 a claim upon which relief can be granted (pursuant to Fed. R. Civ. P. 12(b)(6)).

8     *Venue*

9         To the extent that defendant Carroll contends that venue is improper under 28

10 U.S.C. § 1406(a),[8] defendant's argument is not well-taken.  Venue in this action, brought

11 pursuant to 42 U.S.C. § 1983, lies in "a judicial district 'in which a substantial part of the events

12 or omissions giving rise to the claim occurred....'" or "'in which any defendant may be found, if

13 there is no district in which the action may otherwise be brought.'" 28 U.S.C. § 1391(b)(2) &(3).

14 Defendants, citing Sutain v. Shapiro and Lieberman, 678 F.2d 115, 117 (9th Cir. 1982)1982),[9]

15 aver that the substantial part of the events at issue occurred in Delaware because that is where the

16 2002 DNA samples were taken.  Motion to Dismiss (MTD), p. 5.  However, in this case, plaintiff

17 filed his action in the judicial district where the order for the taking of the DNA samples and

18 prints at issue evidently originated (Opposition (Opp.), pp. 1-2) which inarguably constitutes a

19 substantial part of the events giving rise to plaintiff's claim, and where two of the three

20

---

21     [7] Then defendants Hickman (substituted in at that time in his official capacity for
defendant Woodford) and Lockyer, also sued in his official capacity, and for whom defendants
22 Tilton and Brown have now been substituted in (see footnote 4) have answered the amended
complaint (following denial of their motion to dismiss).
23

24     [8] 28 U.S.C. § 1406(a): "The district court of a district in which is filed a case laying venue
in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such
25 case to any district or division in which it could have been brought."

26     [9] In future, defendant's counsel should use the case citation format appropriate for this
federal district court.

1  defendants are located.   Defendant does not demonstrate that venue in this court is improper.

2        Defendant's more substantial argument is that, pursuant to 28 U.S.C. § 1404(a),

3  the matter should be transferred to the district wherein plaintiff is currently in custody, where the

4  actual taking of the samples and prints took place, and where defendant Carroll is located

5  because that would be the most convenient, economical and judicially efficient venue.   MTD,

6  pp. 4-5.  In a case cited by defendants, <u>Decker Coal Co. v. Commonwealth Edison Co.</u>, 805 F.2d

7  834, 843 (9th Cir. 1986), the Ninth Circuit states that § 1404 has partially displaced the common

8  law doctrine of *forum non conveniens,* but recognizes that *forum non conveniens* considerations

9  are useful in deciding a motion for transfer based on that statute.   In <u>Decker Coal,</u> wherein the

10  federal court's jurisdiction was based on diversity of citizenship, rather than federal question as is

11  the case herein, among the factors to be weighed is the preference to which plaintiff's choice of

12  forum is entitled with the burden of litigating in an inconvenient forum.  <u>Id</u>.  Defendant is

13  required to "make a strong showing of inconvenience to warrant upsetting the plaintiff's choice

14  of forum."  <u>Id</u>.   Private and public interest factors should be considered (many of which are

15  irrelevant to this federal question case, governed by federal, not state law).  <u>Id</u>.  Among the

16  factors that are relevant to this case would be the location of most of the potential witnesses and

17  documents, which defendant contends are mostly located in Delaware, the inconvenience to

18  defendant Carroll, the cost of transporting plaintiff to this district from the place of his current

19  incarceration.  Defendant cites <u>Gemini Capital Group, Inc. v. Yap Fishing Corp.</u>, 150 F.3d 1088

20  (9th Cir. 1998) for the principle that less deference is accorded to a plaintiff's choice of forum

21  when the plaintiff resides outside the selected forum or the operative facts occurred outside that

22  forum.  MTD, p. 4.

23        The Ninth Circuit has long observed that the United States Supreme Court has

24  noted that a § 1404(a) transfer requires "a lesser showing of inconvenience" than that which had

25  to be shown for a *forum non conveniens* dismissal.  <u>Commodity Futures Trading Commission v.</u>

26  <u>Savage,</u> 611 F.2d 270, 279, citing <u>Norwood v. Kirkpatrick,</u> 349 U.S. 29, 32, 75 S. Ct. 544, 546

1  (1955).  "Weighing of the factors for and against transfer involves subtle considerations and is

2  best left to the discretion of the trial judge."  Id.

3          In this case, two of the defendants are located in this district.  It is unlikely in this

4  action for declaratory and prospective injunctive relief that any Delaware Correctional Center

5  (DCC) staff who may have been involved in taking the second set of prints and DNA samples

6  would ever be needed as potential trial witnesses.  To the extent that any depositions may be

7  taken (Reply, p. 2), it does not seem to the court that it is any more onerous, generally, for the

8  parties for the case to be retained here, where two of the three defendants reside in this district.

9  Defendant vaguely references court congestion as a factor to consider but does not adequately

10  explain its applicability in this context.  The cost of transporting plaintiff, should that become

11  necessary, to this district is not likely to be notably greater than the cost of transporting a

12  prisoner-plaintiff across California, which routinely takes place in litigation before this court.

13  Since, as plaintiff avers, the order or request giving rise to plaintiff's claim came from California

14  and the samples and prints were returned there, it is unlikely that the relevant documents are not

15  located within this jurisdiction.  That there would inevitably be some inconvenience to defendant

16  Carroll should his presence be required here is regrettable, but, as plaintiff points out, the

17  potential inconvenience to one defendant does not outweigh that which could be visited upon two

18  other defendants should a transfer be ordered.  Weighing the relevant factors, this court finds that

19  defendant Carroll's motion on this ground should be denied.

20          *Failure to Exhaust - Legal Standard under Non-Enumerated Fed.R.Civ.P. 12(b)*

21          In a motion to dismiss for failure to exhaust administrative remedies under non-

22  enumerated Rule 12(b) of the Federal Rules of Civil Procedure, defendants "have the burden of

23  raising and proving the absence of exhaustion."  Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir.

24  2003).  The parties may go outside the pleadings, submitting affidavits or declarations under

25  penalty of perjury, but plaintiff must be provided with notice of his opportunity to develop a

26  record.  Wyatt v. Terhune, 315 F.3d at 1120 n.14.  The court provided plaintiff with such fair

1   notice by <u>Order</u>, filed on October 19, 2004.

2         Should defendant submit declarations and/or other documentation demonstrating

3   an absence of exhaustion, making a prima facie showing, plaintiff has a burden of production to

4   refute that showing, although plaintiff may rely upon statements made under the penalty of

5   perjury in the complaint if the complaint shows that plaintiff has personal knowledge of the

6   matters stated and plaintiff calls to the court's attention those parts of the complaint upon which

7   plaintiff relies.  If the court determines that plaintiff has failed to exhaust, dismissal without

8   prejudice is the appropriate remedy for non-exhaustion of administrative remedies.  <u>Wyatt v.</u>

9   <u>Terhune</u>, 315 F.3d at 1120.

10         *PLRA Requirements*

11         The Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a) provides that,

12   "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any

13   other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until

14   such administrative remedies as are available are exhausted."  Inmates seeking injunctive relief

15   must exhaust administrative remedies.  <u>Rumbles v. Hill</u>, 182 F.3d 1064 (9th Cir. 1999).   In

16   <u>Booth v. Churner</u>, 532 U.S. 731,121 S. Ct. 1819 (2001), the Supreme Court held that inmates

17   must exhaust administrative remedies, regardless of the relief offered through administrative

18   procedures.  532 U.S. at 741, 121 S. Ct. at 1825.  Therefore, inmates seeking money damages

19   must also completely exhaust their administrative remedies.   <u>Booth v. Churner</u>, 532 U.S. 731,

20   121 S. Ct. 1819 (inmates seeking money damages are required to exhaust administrative

21   remedies even where the grievance process does not permit awards of money damages).  42

22   U.S.C. § 1997e(a) provides that no action shall be brought with respect to prison conditions *until*

23   such administrative remedies as are available are exhausted.  <u>McKinney v. Carey</u>, 311 F.3d 1198,

24   1199 (9th Cir. 2002) ("a prisoner does not comply" with the requirement of § 1997(e)(a) "by

25   exhausting available remedies during the course of the litigation").

26   \\\\\\

1        *Administrative Exhaustion Procedure*

2                In order for California prisoners to exhaust administrative remedies, they must

3    proceed through several levels of appeal:  1) informal resolution, 2) formal written appeal on a

4    CDC 602 inmate appeal form, 3) second level appeal to the institution head or designee, and 4)

5    third level appeal to the Director of the California Department of Corrections.  Barry v. Ratelle,

6    985 F. Supp. 1235, 1237 (S.D. Cal. 1997) (citing Cal. Code Regs. tit. 15, § 3084.5).  A final

7    decision from the Director's level of review satisfies the exhaustion requirement.  Id. at 1237-38.

8                Defendant Carroll sets forth the grievance procedure available in the state of

9    Delaware's, Delaware Correctional Center (DCC) which allows inmates a right to appeal

10   departmental decisions, actions, conditions or policies which prisoners might perceive as

11   impacting them adversely, citing Delaware C.C. SOP 4.4.[10]  MTD, pp. 7-8; Exhibit (Exh.) 1,

12   Declaration of Corporal Lise Merson (hereafter, "Merson Dec.") & Exh. A, DCC SOP 4.4.  The

13   grievance procedure at DCC commences with an inmate's submission of a Level I ("informal

14   resolution") grievance, within seven (7) days of the incident at issue, on a particular form as

15   designated by DCC SOP 4.4, V.G.1., p.7.  MTD, p. 7, Exh. 1, Merson Dec, Exh. A, p. 7,

16   referencing Form # 584R, at pp. 14-15 of Exh. A.  The grievance procedure involves three (3)

17   levels of appeals, providing for an emergency process for "[i]ssues that concern substantial risk

18   of personal, physical or psychological inmate injury...."  MTD, p. 8, Exh. A to Exh. 1, Merson

19   Dec, pp. 7-11.  Defendants argue that the Fifth Circuit has found a procedural default where a

20   prisoner who is a plaintiff fails to exhaust administrative remedies, and the time for filing an

21   administrative grievance has elapsed, although defendant concedes that Marsh concerns the pre-

22   PLRA § 1997e exhaustion requirement.  MTD, p. 8, citing Marsh v. Jones, 53 F.3d 707, 710 (5th

23   Cir. 1995).

24   _____

25          [10] As defined in SOP 4.4, a grievance is "[a] written complaint concerning the substance
     or application of a policy or practice; any action toward an inmate by staff or other inmates; any
         condition or incident within the institution that affects an inmate."  MTD, Exh. A, DCC SOP 4.4,
26   IV. C., p. 2.

1    However, in a case also cited by defendants (MTD, p. 6), this court observes that

2    the United States Supreme Court has, in the context of the applicable PLRA § 1997e(a)

3    exhaustion requirement, resolved any question as to whether a procedural default may be found,

4    should a prisoner plaintiff fail to comply with the procedural rules of a prison's grievance system,

5    reversing this circuit (the Ninth Circuit), and holding that the PLRA exhaustion requirement can

6    only be satisfied by "proper exhaustion of administrative remedies....," which means that a

7    prisoner cannot satisfy the requirement "by filing an untimely or otherwise procedurally defective

8    administrative grievance or appeal." Woodford v. Ngo, ___ U.S. ___,126 S. Ct. 2378, 2382

9    (June 22, 2006).

10    In this instance, no party contends that plaintiff filed any grievance whatever at

11    DCC concerning his objection to the taking of the second DNA samples on October 21, 2002,

12    before, on, or after that date.[11]  MTD, p. 8, Exh. 1, Merson Dec., ¶¶ 3,4, Exh. A; Amended

13    Complaint, p. 2; Opposition (Opp.), p. 3; Reply, pp. 3-5.  Instead, plaintiff contends that there is

14    no administrative, or non-judicial, exhaustion applicable in the context of his claim at DCC

15    because DCC officials were acting on behalf of the California Department of Justice (CA DOJ)

16    via the Interstate Corrections Compact (ICC) in obtaining the DNA samples.  Opp., pp. 3-4.

17    Plaintiff contends that he is suing defendant Carroll on the basis that plaintiff is in

18    his actual custody, thus Carroll acted as an agent of the California Department of Corrections and

19    Rehabilitation (CDCR) (or, as he alternatively asserts, the CA DOJ) with respect to the alleged

20    violations of due process (Opp., p. 2).  In reply, defendant argues that plaintiff's claim that

21    defendant Carroll acted as an agent for the CDCR and thus he was not required to exhaust

22

23    [11] Defendant's Declarant Lise Merson states under penalty of perjury that she is a DCC
     Correctional Corporal responsible for entering grievance information into the Delaware
24    Automated Correctional System at every level of the inmate grievance procedure and that
     plaintiff has filed only two grievances (at least as of October 4, 2006): one dated November 30,
25    2004, which is a medical grievance concerning a request for an eye doctor; the second, dated
     April 20, 2006, which is a medical grievance concerning a medication request.  MTD, Exh. 1,
26    Merson Dec., ¶¶ 1-3.

1   administrative remedies as to Carroll is flawed and was not specifically pled in the amended

2   complaint, noting plaintiff admits filing neither an emergency or other grievance as to Carroll.

3   Reply, pp. 4-5.

4          While plaintiff did not follow the DCC grievance process with respect to any

5   claim against Warden Carroll, it does appear that the DCC grievance process applies specifically

6   to conditions of confinement that arise from within, or under the auspices of the institution itself,

7   rather than one originating from beyond it, such, as here, implementing a request by an out-of-

8   state agency (see footnote 7).   Further, the California defendants against whom plaintiff

9   proceeds, for their alleged actions in seeking and receiving plaintiff's DNA samples, finger and

10  palm prints for a second time, in their motion to dismiss (denied by Order, filed on 9/28/05) did

11  not move for dismissal on the ground that plaintiff failed to exhaust administrative remedies, for

12  which non-exhaustion they have the burden to prove.   Wyatt v. Terhune, supra, 315 F.3d at 1119.

13  The court observes that to his amended complaint, plaintiff attaches exhibits indicating that he

14  filed petitions for writs of habeas corpus, challenging the taking of the second set of samples,

15  filed in the Sacramento County Superior Court, the California Third District Court of Appeals

16  and the California Supreme Court, and all of which were denied.  Evidently, plaintiff, who first

17  brought this case as a petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254 (which this

18  court dismissed with leave to amend), was at pains to demonstrate exhaustion of state court

19  remedies.  Exhaustion of California state court remedies is not at issue.  The undersigned finds

20  the exhaustion issue unique.  Firstly, unlike federal habeas corpus, California permits suits in

21  habeas corpus for a range of "prison conditions" problems.  See generally In re Roberts, 36 Cal.

22  4th 575, 31 Cal. Rptr. 3d 458 (2005).  While exhaustion of court remedies would not always be

23  the proper exhaustion route for all conditions, that issue has not been raised by the California

24  defendants.  Thus, plaintiff may well have exhausted his contentions in California state court,

25  just as the law may require him to do so.  Secondly, the case law is silent to the undersigned's

26  knowledge about exhaustion of the same issue in two different state systems.  The exhaustion

10

1    process certainly has salutary aspects, but these should not be taken so far as to simply be a series

2    of traps for unsuspecting lay prisoners.  In the circumstances of this case, the court finds the

3    putative exhaustion of California procedures to be sufficient.  The motion on this ground should

4    be denied.

5              *Ground for Relief*

6              Defendant contends that plaintiff does not allege a proper basis for declaratory

7    relief.  MTD, pp. 9-10; Reply, pp. 5-6.  Defendant is correct that plaintiff fails to state a claim,

8    pursuant to Fed. R. 12(b)(6), to the extent that he seeks a declaratory judgment related to the

9    DNA sample collection in October of 2002, citing, inter alia, Hillblom v. U.S., 896 F.2d 426, 430

10   (9th Cir. 1990).

11             Federal courts were granted authority to issue declaratory judgments through the

12   Declaratory Judgment Act:

13             In a case of actual controversy within its jurisdiction, [exceptions
             omitted] ... any court of the United States, upon the filing of an
14           appropriate pleading, may declare the rights and other legal
             relations of any interested party seeking such declaration, whether
15           or not further relief is or could be sought.  28 U.S.C. § 2201(a).

16   Biodiversity Legal Foundation v. Badgley, 309 F.3d 1166, 1172 (9th Cir. 2002).  To warrant the

17   issuance of a declaratory judgment "the question in each case is whether the facts alleged, under

18   all the circumstances, show that there is a substantial controversy between parties having adverse

19   legal interests of sufficient immediacy and reality...."  Western Min. Council v. Watt, 643 F.2d

20   618, 624 (9th Cir. 1981); see also, Principal Life Ins. Co. v. Robinson, 394 F.3d 665, 668 (9th Cir.

21   2004).

22             Despite plaintiff's protestations that he could never have anticipated the second

23   DNA testing that occurred in October, 2002, four years after the sample-taking to which he was

24   subjected in 1998 (Opp., pp. 3-4), declaratory relief is not available based on his allegations.  The

25   problem plaintiff encounters is one of imminency.  There is no reason to believe that a third

26   sample may be taken anytime in the near future.  However, as noted earlier, this court has

1   construed that plaintiff also seeks "prospective injunctive relief, seeking not to be subjected again

2   by defendants, in their official capacities, to any future taking of DNA samples in violation of his

3   federal constitutional rights." See footnote 5.  Since plaintiff was apparently and unexpectedly

4   subjected to an additional round of DNA sample taking four years after the initial taking, the

5   court finds that the action falls within the "capable of repetition, yet evading review" exception

6   to the mootness doctrine.  Miller for an on Behalf of N.L.R.B. v. Calif. Pacific Med. Center, 19

7   F.3d 449, 453 (9th Cir. 1994).

8                        T]he "capable of repetition, yet evading review" doctrine [is]
                         limited to the situation where two elements combine[ ]: (1) the
9                        challenged action [is] in its duration too short to be fully litigated
                         prior to its cessation or expiration, and (2) there [is] a reasonable
10                       expectation that the same complaining party [will] be subjected to
                         the same action again.
11

12   Id., quoting Weinstein v. Bradford, 423 U.S. 147, 149, 96 S. Ct. 347, 349 (1975) (per curiam).

13   Plaintiff's contention is that based upon what occurred in October, 2002, he might again be

14   required to submit DNA samples, even though he believed he was required to do so only once.

15   This ground for dismissal should be denied.

16               *Defendant not liable for DNA Sample Collection*

17               Carroll's final argument is that defendant Carroll should be dismissed whether

18   plaintiff challenges the constitutionality of the DNA and Forensic Identification Data Base and

19   Date Bank Act of 1998 on substantive and/or procedural due process grounds, or contends that

20   the statute itself was violated.  MTD, pp. 10-12; Reply, p. 6.   Defendant cites federal and state

21   case authority upholding the statute's validity and for the proposition that DNA sample collection

22   and DNA databases have not been found to implicate due process concerns, e.g., Rise v. Oregon,

23   59 F.3d 1556 (1995).  In a case not cited by defendant, U.S. v. Kincade, 379 F.3d 813, 832-33

24   (9th Cir. 2004), the Ninth Circuit reaffirmed Rise, supra, holding that "its reliance on a totality of

25   the circumstances analysis to uphold compulsory DNA profiling of convicted offenders both

26   comports with the Supreme Court's recent precedents and resolves this appeal in concert with the

1  requirements of the Fourth Amendment."

2  However, defendant's authorities do not address the question of whether taking

3  more than one set of DNA samples violates due process.  It does not appear that plaintiff is

4  alleging a violation of Cal. Penal Code § 295, et seq.  But even if he were, the very case

5  defendant cites, Campbell v. Burt, 141 F.3d 927, 930 (1998) for the correct contention that

6  generally a state law violation does not give rise to liability under § 1983, recognizes that state

7  law may form the basis for federal action in the context of prisoners' rights.

8  Defendant also quotes Cal. Penal Code § 298(c)(2), which purports to immunize

9  from any civil or criminal action  "any state law enforcement agency or the Department of

10  Justice, or any employee thereof, for a mistake in confirming a person's or sample's qualifying

11  status for inclusion within the database or date bank or in placing an entry in a data bank or a

12  database."  However, this only begs the question of what basis defendants had for requesting the

13  second set of DNA blood and saliva samples.  To date, no party has represented why plaintiff

14  was subjected to the second DNA sample collection.  This ground for the motion should be

15  denied.

16  Accordingly, IT IS ORDERED that CDCR Secretary James Tilton and Attorney

17  General Edmund Brown are substituted as defendants, each in his official capacity, in the place

18  of defendants Woodford (or Hickman) and Lockyer, pursuant to Fed. R. Civ. P. 25(d).

19  IT IS RECOMMENDED that defendant Carroll's motion to dismiss,

20  filed on October 4, 2006, be denied, and defendant Carroll be ordered to file an answer within

21  thirty days of adoption of these Findings and Recommendations, should that occur.

22  These findings and recommendations are submitted to the United States District

23  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

24  days after being served with these findings and recommendations, any party may file written

25  objections with the court and serve a copy on all parties.  Such a document should be captioned

26  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

1  shall be served and filed within ten days after service of the objections.  The parties are advised

2  that failure to file objections within the specified time may waive the right to appeal the District

3  Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

4  DATED: 8/21/07

                                        /s/ Gregory G. Hollows

                            _____

                            GREGORY G. HOLLOWS

                            UNITED STATES MAGISTRATE JUDGE

GGH:009
char0444.mtd2