IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

TIMMY O'NEIL CHARITY,

    Plaintiff,                           No. CIV S-04-0444 GEB GGH P

    vs.

THOMAS CARROLL, Warden et al.,

                                        ORDER &amp;
                                        FINDINGS AND RECOMMENDATIONS
    Defendant.

_____/

I. Introduction

        Plaintiff, a prisoner incarcerated in the State of Delaware, proceeding pro se, seeks relief pursuant to 42 U.S.C. § 1983. Pending before the court are California defendants, E. Brown and M. Cate's motion to dismiss for failure to exhaust administrative remedies and in the alternative, motion for summary judgment, filed on September 18, 2008, to which plaintiff filed his opposition, on October 2, 2008. Also pending is plaintiff's re-submission of his motion to compel filed on December 15, 2008.

\\\\\

\\\\\

\\\\\

\\\\\

II.  Plaintiff's Allegations

        The court borrows from its prior recitation of plaintiff's claims with appropriate modification.  This action proceeds upon the amended complaint, filed on May 7, 2004,[1] against three defendants: Thomas Carroll, Warden, Delaware Correctional Center;[2] J.S. Woodford, Director of the (then) California Department of Corrections (now California Department of Corrections and Rehabilitation - CDCR); Bill Lockyer, Attorney General of California, California Department of Justice (DOJ).[3]  Plaintiff's DNA was first taken upon request of California DOJ on December 9, 1998, and carried out by CDCR through the prison staff at the Delaware Correctional Center.  Amended Complaint (AC), p. 3A.  On October 21, 2002, a second sample of plaintiff's saliva and blood DNA, as well as finger and palm prints and photos, were taken pursuant to an order or request which was apparently issued pursuant to Cal. Penal Code § 296,[4] et seq. AC, p. 3A.  Plaintiff is challenging the second taking in 2002 of his DNA blood and saliva samples and finger and palm prints.  Plaintiff contends the DNA samples were obtained without due process.

        Plaintiff was never notified either in 1998 or 2002 of the required DNA sample testing; had plaintiff refused to comply with the 2002 order, a prison disciplinary report would have been issued against plaintiff, which report would have served as a basis for the parole board

---

[1] Plaintiff's original filing, on March 4, 2004, inappropriately in the form of a habeas application, was dismissed with leave granted for plaintiff to file a civil rights action under 42 U.S.C. § 1983.  See Order, filed on April 15, 2004.

[2] Defendant Thomas Carroll was terminated from this action pursuant to a voluntary stipulation of dismissal by the parties on June 10, 2008.

[3] E. Brown and M. Cate were later substituted as defendants for CDCR and California DOJ.

[4] Cal. Penal Code § 296 specifies that individuals who have been convicted of the felony offenses therein identified  "shall provide buccal swab samples, right thumbprints, and a full palm print impression of each hand, and any blood specimens or other biological samples required...for law enforcement identification analysis...."  Such individuals are to be "included within the state's DNA and Forensic Identification Data Base and Data Bank program...."

1  to deny plaintiff parole.  Id.  The 2002 DNA testing was exactly the same testing performed in
2  1998.  Id.  DNA testing in plaintiff's case is a registration requirement as a condition of release.
3  Id.  Plaintiff's California state court habeas petitions with respect to the second DNA test were
4  denied.  AC, pp. 3A-3B & Exhibits C, D, E.  Plaintiff alleges that the denial of his petition(s)
5  constituted a denial of due process in the search and seizure of DNA samples from him; plaintiff
6  is concerned that his DNA samples will not be properly safeguarded and that the DOJ could
7  require additional DNA samples in the future.  AC, p. 3B.  Plaintiff seeks a declaratory judgment
8  only.[5]  See Order & Findings and Recommendations, filed on August 10, 2005, adopted by
9  Order, filed on September 28, 2005.  Plaintiff does not seek damages.

10         Plaintiff has subsequently clarified his position that the action as to the taking of
11  the 1998 DNA samples is barred by the statute of limitations, that what is at issue is the
12  constitutionality of the taking of the October, 2002 DNA samples.  The court has found that the
13  taking of the 1998 sample is provided as a "background or historical fact essential to his claim
14  arising from the taking of a second DNA sample in 2002....[w]ithout this background fact,
15  plaintiff could not challenge the constitutionality of the taking of the 2002 DNA sample...because
16  his claim is premised on the allegation that to repeat the sample taking and testing subjected him
17  to a constitutional deprivation."  Id., at 8-9.
18  III.  Procedural History
19         On December 22, 2004, defendants for CDCR and California DOJ filed a motion
20  to dismiss this action on the grounds that plaintiff fails to state a claim upon which relief can be
21  granted, pursuant to Fed. R. Civ. P. 12(b)6.  That motion was denied on September 28, 2005.

---

[5] The court has previously found that plaintiff, in addition to seeking declaratory relief, also asks for "prospective injunctive relief, seeking not to be subjected again by defendants, in their official capacities, to any future taking of DNA samples in violation of his federal constitutional rights."  Order & Findings and Recommendations, filed on 8/10/05, pp. 6-7, adopted by Order, filed on 9/28/05.  As both defendants Woodford and Lockyer have been sued in their official capacities and no longer hold their respective positions, pursuant to Fed. R. Civ. P. 25(d), California Department of Corrections and Rehabilitation (CDCR) Secretary Matthew Cate and Attorney General Edmund Brown are substituted in as official capacity defendants.

On October 4, 2006, defendant Carroll, warden of the Delaware Correctional Center filed a motion to dismiss this action on the grounds that plaintiff had failed to exhaust his administrative remedies as required by the PLRA. The undersigned issued findings and recommendations denying the motion and noted the "two state" exhaustion issue to be unique.[6] Before the court now is the California defendants second motion to dismiss, for failure to exhaust administrative remedies, filed on September 18, 2008, nearly four years after the first motion to dismiss.

IV. Motion to Dismiss

Defendants filed their answer on October 24, 2005. A Scheduling Order was filed on November 13, 2007, setting the discovery cutoff date (April 18, 2008), and the deadline for the filing of pretrial dispositive motions (September 19, 2008). Nevertheless, not until September 18, 2008, did these defendants bring this second motion to dismiss alleging plaintiff's failure to exhaust administrative remedies before filing this action, pursuant to nonenumerated Fed. R. Civ. P. 12(b).[7] In their favor, defendants did raise and preserve the affirmative defense of non-exhaustion in their answer, filed on October 24, 2005.

Under Fed. R. Civ. P. 12(b), as to the specifically enumerated grounds 1 through 7, the rule announces that "[a] motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed." This court finds that although this motion is one that is brought under the nonenumerated grounds of Rule 12(b), that, similarly, such a motion, generally, is timely when it, too, is brought prior to the filing of an answer. This is so because defendants have ready access to the CDCR records, or lack thereof, to support the motion and, if they do not, they have the means to seek an extension of time before filing an answer from the court to be permitted to gather the requisite information. Moreover, this litigation had been

---

[6] As previously noted, defendant Carroll was terminated from this action pursuant to a voluntary stipulation of dismissal by the parties on June 10, 2008.

[7] The motion to dismiss is also, in the alternative, a motion for summary judgment.

proceeding for more than four years before defendants brought the instant motion and this court has expended time and resources on a previous discovery motion by plaintiff (opposed by defendants) and a previous motion to dismiss by these defendants.

This court has not been able to uncover any binding and conclusive authority on the issuance of the timeliness, or lack thereof, of a nonenumerated 12(b) motion; however, the undersigned finds that the reasoning set forth in a federal court in the Central District of California, where the district judge found defendant's motion to dismiss for nonexhaustion of administrative remedies, filed some ten months after the filing of the answer, untimely, best encapsulates the position of the undersigned:

> Moving Defendant cites no case law which indicates that the issue of exhaustion of administrative remedies may only be raised through a motion for summary judgment. On the contrary, the Ninth Circuit has repeatedly found that "failure to exhaust nonjudicial remedies is a matter in abatement, not going to the merits of the claim, and as such is not properly raised in a motion for summary judgment." *Ritza v. International Longshoremen's And Warehousemen's Union, et al.*, 837 F.2d 365, 368 (9th Cir.1988) (citation omitted); *Inlandboatmens Union of the Pacific v. Dutra Group*, 279 F.3d 1075, 1083 (9th Cir.2002) ("We have held that a failure to exhaust non-judicial remedies must be raised in a motion to dismiss, and should be treated as such even if raised as part of a motion for summary judgment.")
>
> Under previously existing Ninth Circuit case law, Moving Defendant should have brought his challenge to Plaintiff's claims based on failure to exhaust administrative remedies *through a timely motion to dismiss* rather than a motion for summary judgment.
>
> The Ninth Circuit allows a Rule 12(b) motion *any time before the responsive pleading is filed*. See *Aetna Life Ins. Co. v. Alla Medical Services, Inc.*, 855 F.2d 1470, 1474 (9th Cir.1988) (citing *Bechtel v. Liberty Nat'l Bank*, 534 F.2d 1335, 1340-41 (9th Cir.1976) (In *Bechtel*, the Ninth Circuit noted that "while some courts hold that Rule 12(b) motions must be made within 20 days of service of the complaint, the rule itself only requires that such motions 'be made before pleading if a further pleading is permitted.' ')

Thomas v. Baca, 2003 WL 504755, *2 (C.D. Cal. 2003) [emphasis added].

\\\\\

While, of course, defendants have not brought this motion technically within a motion for summary judgment, but, instead have brought it separately the reasoning is no less apposite. The undersigned is aware of conflicting decisions at the district court level within this circuit, see, e.g., Rigsby v. Schriro, 2008 WL 2705376, *1 n. 2 (D. Ariz. 2008) (finding that, where defendant simultaneously filed an answer – asserting the failure to exhaust defense – and an unenumerated motion to dismiss for failure to exhaust administrative remedies, such a motion "need not be made before answering"); Tyner v. Schriro, 2008 WL 752612, *1 n. 1 (D. Ariz. 2008) (same); see also, Thrasher v. Garland, 2007 WL 3012615 *2 (W.D. Wash. 2007) (asserting that, although a motion to dismiss pursuant to the specifically enumerated grounds of Rule 12(b) should be brought before the answer is filed, a nonenumerated 12(b) motion "need not necessarily be brought prior to the filing of the answer."[8]

However, this court finds the reasoning of Thomas v. Baca, supra, to better promote judicial efficiency and economy while at the same time limiting unfair prejudice to a pro se prisoner plaintiff. As noted, the state attorney general has virtually unlimited access to CDCR records. Defendants' counsel makes no effort whatever to explain why such a motion could not have been brought prior to the filing of the answer on behalf of these two defendants or in the their first motion to dismiss. This court had expended resources and time to screen the case, rule on two separate motions to dismiss and adjudicate a discovery dispute. Nor is the question of exhaustion, or lack thereof, of administrative remedies a jurisdictional one. Wyatt v. Terhune, 315 F.3d 1108, 1119 n. 13 ("PLRA exhaustion is not a jurisdictional requirement.") Accordingly, the undersigned will not reach the merits of defendants' motion to dismiss for failure to exhaust administrative remedies as this court finds the motion to be untimely.

---

[8] Moreover, some courts in this district specifically schedule the filing of nonenumerated 12(b) motions two or three months beyond the filing of the answer, which, of course, is certainly and entirely within a court's discretion. See, e.g., Hill v. Williams, 2008 WL 5212591, *7 (E.D. Cal. 2008); Johnson v. Shawnego, 2007 WL 509226 (E.D. Cal. 2007).

V. <u>Summary Judgment</u>

Defendants also move the court for summary judgment on the grounds that there is no issue as to any material fact and that defendants are entitled to judgment as a matter of law.

<u>Standards</u>

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"  <u>Id.</u>  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  <u>See id.</u> at 322, 106 S. Ct. at 2552.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  <u>Id.</u>  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  <u>Id.</u> at 323, 106 S. Ct. at 2553.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  <u>See</u> <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356

(1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11, 106 S. Ct. at 1356 n. 11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than

simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" <u>Matsushita</u>, 475 U.S. at 587, 106 S. Ct. at 1356 (citation omitted).

On October 19, 2004, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. <u>See</u> <u>Rand v. Rowland</u>, 154 F.3d 952, 957 (9th Cir. 1998) (<u>en</u> <u>banc</u>); <u>Klingele v. Eikenberry</u>, 849 F.2d 409, 411-12 (9th Cir. 1988).

<u>Undisputed Facts</u>

The following of defendants' undisputed facts (DUF) are either not disputed by plaintiff, or following the court's review of the evidence submitted, have been deemed undisputed.

Plaintiff is serving his sentence in Delaware under the Interstate Compact Act. DUF #2. On December 9, 1998, Delaware prison officials took plaintiff's DNA samples- saliva, blood, finger and palm prints and photos. DUF #3. Delaware prison officials took plaintiff's DNA a second time on October 21, 2002. DUF #4. Plaintiff did not refuse to provide samples on either date, however, he did indicate that he was concerned about refusing, for fear of receiving a prison disciplinary report. DUF #5. Plaintiff acknowledged that the DNA sampling process was not painful on either occasion. DUF #7. Plaintiff concedes that DNA testing is a registration requirement as a condition of release, DUF #9, though plaintiff is still incarcerated.

<u>Disputed Facts</u>

There are no disputed facts, however, it remains unknown why plaintiff's DNA was taken again in 2002.

<u>Discussion</u>

"[T]hose who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy." <u>City of Los Angeles v. Lyons</u>, 461 U.S. 95, 101, 103 S.Ct. 1660, 1665 (1983);

Jones v. City of Los Angeles, 444 F.3d 1118, 1126 (9th Cir.2006). "Abstract injury is not enough." Lyons, 461 U.S. at 101, 103 S.Ct. at 1665. "[P]laintiff must show that he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct and the injury or threat of injury must be both real and immediate, not conjectural or hypothetical." Id. "The key issue is whether the plaintiff is 'likely to suffer future injury.'" Jones, 444 F.3d at 1126 (quoting Lyons at 105, 1667). When a government agency is involved, it must "be granted 'the widest latitude in the dispatch of its own internal affairs,'" Gomez v. Vernon, 255 F.3d 1118, 1128 (9th Cir.2001) (quoting Rizzo v. Goode, 423 U.S. 362, 378-79, 96 S.Ct. 598, 608 (1976)), and "[w]hen a state agency is involved, these considerations are, in anything, strengthened because of federalism concerns," Gomez, 255 F.3d at 1128. "[A]ny injunctive relief awarded must avoid unnecessary disruption to the state agency's 'normal course of proceeding.'" Id. at 1128 (quoting O'Shea v. Littleton, 414 U.S. 488, 501, 94 S.Ct. 669, 679 (1974)).

Furthermore, any award of equitable relief is governed by the Prison Litigation Reform Act, which provides in relevant part, "Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626(a)(1)(A).

In the instant case, plaintiff seeks to prevent any future taking of his DNA and to learn the reason for the taking of his DNA in 2002. Yet, plaintiff has failed to meet the requirements described in Lyons.

Plaintiff has not demonstrated that there exists a real or immediate threat of injury nor has plaintiff met his burden in showing that the taking of a second DNA sample qualifies as

\\\\\

an injury. It is undisputed that CDCR is allowed to take plaintiff's DNA.[9] Plaintiff contends that taking the DNA twice in four years, in 1998 and 2002, constitutes an injury and there is a threat of another DNA sampling. Plaintiff has failed to show that he is threatened by another taking of his DNA, in fact, his DNA has not been taken in the last seven years, since 2002. Plaintiff's allegations of future harm are too hypothetical to warrant injunctive relief that would permanently enjoin CDCR from ever taking plaintiff's DNA.

Plaintiff has already consented and provided his DNA to prison officials. While it is possible that prison officials could request additional DNA samples from plaintiff in the future that has not yet occurred and is not ripe for adjudication. Nor is this a situation where plaintiff's claim is capable of repetition, yet evades review. The capable-of-repetition doctrine only applies in exceptional circumstances. Spencer v. Kemna, 523 U.S. 1, 17, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998) ( "[T]he capable-of-repetition doctrine applies only in exceptional situations, ... where the following two circumstances [are] simultaneously present: (1) the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again."). As previously indicated, it does not appear that plaintiff will be subject to DNA sampling again.

The court also denies plaintiff's request to know the reason for the second DNA sampling. Plaintiff's curiosity is not a cognizable basis for federal court litigation. Moreover, the court will not second guess decisions made by prison officials in the ordinary day-to-day operations of prison life. A state agency must be granted wide latitude in its own internal affairs. Gomez, at 1118. The decision to take a second DNA sample from plaintiff does not warrant court intervention. For the same reasons that plaintiff is not entitled to injunctive relief,

---

[9] DNA sampling of prisoners was governed by Cal. Penal § 290.2 prior to 1998 and by Cal. Penal § 296 after 1998. In Rise v. Oregon, 59 F.3d 1556 (9th Cir.1995), the Ninth Circuit held that statutes allowing prison officials to take DNA samples are constitutional. Rise, 59 F.3d at 1562 (affirmed in United States v. Kincade, 379 F.3d 813 (9th Cir.2004)).

declaratory relief is not appropriate and plaintiff's request for declaratory relief is denied.

VI.  Motion to Compel

As the court is recommending that defendants' motion for summary judgment be granted and this case dismissed, plaintiff's motion to compel is denied.

ACCORDINGLY, IT IS HEREBY ORDERED that plaintiff's motion to compel, filed December 15, 2008 (docket #57), is denied.

IT IS HEREBY RECOMMENDED that:

1.  Defendant's motion to dismiss (docket #52) be denied.

2.  Defendant's motion for summary judgment be granted, and this case be dismissed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:   08/07/09

/s/ Gregory G. Hollows

GREGORY G. HOLLOWS
UNITED STATES MAGISTRATE JUDGE

ggh:ab
char0444.sj